```
                                           Priority  ___
                                           Send      ___
                                           Enter     ___
                                           Closed    ___
                                           JS-5/JS-6  ✓
                                           JS-2/JS-3 ___
                                           Scan Only ___
```

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA -- WESTERN DIVISION

| | |
|---|---|
| NV SECURITY, INC., Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>FLUKE NETWORKS and HARRIS CORPORATION, DOES 1-100, Et al<br><br>Defendants | Case No.: CV05-4217 GW (SSx)<br><br>Honorable George H. Wu<br><br>[~~PROPOSED~~]<br>**ORDER GRANTING FINAL APPROVAL TO CLASS ACTION SETTLEMENT AND FINAL JUDGMENT** |

## ORDER GRANTING FINAL APPROVAL TO CLASS ACTION SETTLEMENT AND FINAL JUDGMENT

On October 2, 2009, this Court granted preliminary approval to the proposed Class Action settlement set forth in the Settlement Agreement, outlined and approved the form and procedure for giving notice of the proposed Class Action settlement to members of the Settlement Class and set a final fairness hearing to take place on February 8, 2010.

On February 8, 2010, the Court held a duly noticed final fairness hearing to consider: (1) whether the terms and conditions of the Settlement Agreement executed by the parties to this Action are fair, reasonable and adequate to the entire Class; (2) whether and in what amount to award attorneys' fees and expenses to counsel for the Class; and (3) whether and in what amount to award stipend payments to the named Class Representatives.

The Court, having reviewed the written and oral submissions of the parties, the Settlement Agreement and the attachments thereto which have been filed with the Court, all objections timely filed by the Settlement Class Members, if any, and having been fully advised and good cause appearing therefor,

**IT IS HEREBY ORDERED** as follows:

1)  The parties have agreed to settle this Action upon the terms and conditions set forth in the Settlement Agreement (the "Settlement Agreement"). The Settlement Agreement, including the definitions contained therein, is incorporated by reference into this Final Judgment. Any uncertainty concerning the parties' rights and obligations should be resolved by looking to the terms of the Settlement Agreement.

**The Settlement Class Satisfies the FRCP 23(a) and 23(b) Requirements:**

2)  The Court finds that the prerequisites for a Class Action under F.R.C.P. Rule 23 and Rule 23(b)(2) have been satisfied for the Settlement

1  Class in that: (a) the number of Class Members is so numerous that joinder of all members thereof is impracticable; (b) there are questions of law and fact common to the Class; (c) the claims of the Plaintiffs are typical of the claims of the Class they seek to represent; (d) the Plaintiffs have fairly and adequately represented and will fairly and adequately represent the interests of the Class for purposes of entering into the Settlement Agreement; and, (e) equitable relief is the predominant relief to be provided to Class Members.

3) Pursuant to F.R.C.P. Rule 23 and Rule 23(b)(2), this Court hereby finally certifies the Settlement Class, as defined in ¶ 1.5 of the Settlement Agreement.

4) The Court finally recognizes N.V. Security, Inc. and Donald DeHart, plaintiffs, as Certified Class Representatives in the Action. The Court also appoints Class Counsel as counsel for the Settlement Class as follows:

| BRAMSON, PLUTZIK, MAHLER & BIRKHAEUSER LLP<br>2125 Oak Grove Road, Suite 120<br>Walnut Creek, CA  94598<br>Phone (925) 945-0200<br>Fax (925) 945-8792 | LEVI & KORSINSKY LLP<br>39 Broadway, Suite 1601<br>New York, New York  10006<br>Phone: (212) 363-7500<br>Fax: (212) 363-7171 |
|---|---|

### Reasonable Notice of the Settlement Has Been Given
### To the Settlement Class Members:

5) The Court finds that notice to the Class of the pendency of this Action and the terms of the proposed settlement (the "Class Notice"), in the form and procedure outlined and approved by the Court in its preliminary approval order dated October 2, 2009, was given in the manner ordered by the Court.

6) The Class Notice met the requirements of Rule 23 of the Federal Rules of Civil Procedure, due process, and any other applicable law, constituted the best notice practicable under the circumstances, and constituted due and sufficient notice to all persons and entities entitled thereto.

### The Settlement Agreement is Approved:

7) The Settlement Agreement is hereby approved as fair, reasonable, and adequate to the Class, and is consistent with the Public Interest. Specifically, the Court finds that:

   a. The Settlement Agreement is the result of intensive, good faith negotiations between experienced attorneys familiar with the legal and factual issues of the Action, which negotiations included but were not limited to discussions before a neutral mediator;

   b. The Class Members are treated fairly under the Settlement Agreement; and,

   c. The Settlement Agreement provides for the distribution of fair, reasonable, and adequate benefits to the Class.

8) In so finding, the Court has duly considered the nature of the claims and defenses in this Action, the procedural posture and stage of the Action, the costs and risks of continued litigation, the recommendation of experienced Class Counsel, the relief provided under the Settlement, and all other factors relevant to a determination of the fairness and reasonableness of the settlement.

### Attorneys' Fees and Expenses:

9) The Court hereby awards Class Counsel attorneys' fees, litigation costs and expenses in the amount of $ 1,490,000, payable by Settling Defendants pursuant to the terms of the Settlement Agreement. The Court finds that said award is fair and reasonable.

10) The Court also awards stipends in the amount of $5000 to each of the two (2) named Class Representatives, which the Court finds to be an appropriate incentive award and payment for the time, trouble, expense and efforts of the Class Representatives in representing and vindicating the rights of the Class, payable by Settling Defendants pursuant to the terms of the Settlement Agreement.

**IT IS FURTHER ORDERED** as follows:

### Benefits to the Class:

11) **Discontinued Sales of "L-Series" Models:** Settling Defendants are hereby restrained and enjoined from the future manufacture and/or sale of each of the following four (4) lock-out models of the TS22 Series of Telephone Test Sets: TS22AL; TS22L; TS22LO; and TS22ALO.

12) **Advisory on Packaging and Webpage and Extended 3 Volt Battery Warranty:**

    a. Beginning no later than thirty (30) days after the Settlement Agreement becomes effective (the "Effective Date")[1] and continuing until Defendant Fluke no longer offers the TS22 or TS22A model telephone test set for sale, Defendant Fluke shall include an advisory with respect to the internal 3 volt battery on the exterior packaging for each TS22 and TS22A model telephone test set manufactured and sold after such date. The advisory shall read as follows:

        • This TS22 Series Test Set contains an embedded 3-volt lithium battery. The 9-volt battery in the

---

[1] Under the Settlement Agreement, Section 9.1, the "Effective Date" is when [i] the Settlement Agreement is executed and delivered by all parties to the Court; [ii] entry of an Order identical in all material respects to the Order granting Preliminary Approval attached hereto as Exhibit B; [iii] entry of an Order identical in all material respects to the Final Judgment attached hereto as Exhibit C; and [iv] the Order and Final Judgment in the foregoing clause becomes "Final" and no longer subject to any potential or pending appeals. Thus, the Effective Date is at the time that this Order and Judgment are no longer subject to any potential or pending appeals.

test set should be changed when low, or once a year if not in use, in order to prevent the 3-volt battery from draining. A 3-volt battery that drains after its forty-two (42) month warranty will need to be replaced by an authorized service facility at a charge to you.

- Note also that your speakerphone will no longer work when your 9-volt battery is low or dead. You should replace the 9-volt battery whenever it is low.

b. Concurrently with the placement of an advisory on packaging for TS22 and TS22A models by Fluke, Fluke will also display the same advisory on the following web pages: http://www.flukenetworks.com/fnet/en-us/products/TS22+Series/Overview.htm and http://www.flukenetworks.com/fnet/en-us/products/TS22+Series/Specifications.htm. Fluke will maintain this advisory on such web pages (or the equivalent pages that contain specifications and descriptions for TS22 models if there is a change in the organization of Fluke's websites) for a period of four (4) years following the Effective Date or until such time as the aforementioned web pages, or information regarding TS22 and TS22A models, is no longer maintained on Fluke's website, whichever is earlier.

c. TS22 and TS22A test sets sold with this advisory on the packaging thereof are not Qualified Units under the Settlement Agreement, and Persons who purchase such test sets are not Settlement Class Members.

d. For all TS22 and TS22A test sets sold after the Effective Date, Fluke shall provide a warranty covering the 3 volt

battery (only), which shall provide that a 3-volt battery that fails within forty-two (42) months after original purchase of the unit will be replaced free of charge to the owner (excluding shipping costs). This new warranty shall be disclosed wherever Fluke's current standard warranty on TS22 and TS22A test sets is disclosed, for all units manufactured after 60 days from the Effective Date.

13) **Replacement of Discharged 3-volt Batteries:** Beginning no later than thirty (30) days after the Effective Date and continuing for a period of five (5) years thereafter, Defendants shall provide to Class Members a one-time replacement of the internal 3-volt battery in a Qualified Unit, at no expense to the owner of the Qualified Unit, for Qualified Units that are properly submitted for such replacement. This one time 3-volt battery replacement shall be administered and available as follows:

    a. Each Class Member who purchased a Qualified Unit, which failed due to a discharged 3-volt battery, may contact Fluke for instructions for shipping such Qualified Unit to Fluke for examination and replacement of the discharged 3-volt battery at no expense to that Class Member.

    b. Upon receipt of the Qualified Unit, Fluke shall examine the Qualified Unit and confirm the Class Membership of the Class Member and submitted Qualified Unit, and then replace the discharged 3-volt battery and ship it back to the Class Member, at no expense to the Class Member. Fluke may request additional information from any Person submitting a telephone test set pursuant to this Order to verify that the Person is a Class Member and that the Unit is covered by the Settlement Agreement, and may deny free 3-

volt battery replacement to any Person who is not able to verify his or her status as a Class Member and for any test set not covered by the Settlement Agreement.

 c. If the 3-volt battery in a Qualified Unit submitted by a Class Member for battery replacement pursuant to this Order is not discharged, no free replacement will be provided.

 d. No individual Qualified Unit may be submitted for a free 3-volt battery replacement more than one time.

 e. The availability of free 3-volt battery replacement under this provision shall terminate five (5) years after the Effective Date.

 f. If the Qualified Unit sent to Fluke for a free 3-volt battery replacement pursuant to this section is also in need of additional other repairs, Fluke may charge its normal repair fee for those repairs, subject to the terms of its warranty; provided, however, Fluke must obtain authorization from the Class Member for any such additional charges before performing such work, as set forth in the Settlement Agreement between the parties. If the Class Member requests that the Qualified Unit be returned without the additional other repairs, Fluke shall ship it back to the Class Member, at no expense to the Class Member.

14) **Refunds For Certain Repair Charges Paid by Class Members:** For the benefit of Settlement Class Members that submitted Qualified Unit(s) to Defendants since January 1, 2001 for repair due to a discharged 3-volt battery, and for which a repair charge was paid to Settling Defendants for replacement of the 3-volt battery, Defendants shall contribute monies to be deposited in an interest-bearing escrow account at a financial

8

institution to be designated by Class Counsel and The Garden City Group, Inc., a Class Action Administrator agreed to by the parties (the "Administrator"). The monies contributed by defendants and deposited into such escrow account shall be designated collectively as the "Escrow Fund." The Escrow Fund shall be funded and distributed as follows:

    a. **Funding of the Escrow Fund:** Within 30 days of the Effective Date, Settling Defendants shall deliver to the Administrator the following monies:

        1. The sum of One Hundred Dollars for each Qualified Unit submitted for repair due to a discharged 3-volt battery, and for which a repair charge was paid to Settling Defendants for a repair which included replacement of the 3-volt battery, as shown in Fluke's repair records exchanged among the parties in this Action (the "2004-2009 Amount"); and,

        2. An amount equal to the 2004-2009 Amount (hereinafter the "2001-2004 Amount").

    Upon receipt of the 2004-2009 Amount and the 2001-2004 Amount from Settling Defendants, the Administrator shall deposit such funds into the escrow account referenced above.

    b. **Distribution of the Escrow Fund:** The Escrow Fund shall be administered and distributed by the Administrator as soon as reasonably practicable after the Effective Date as follows:

        1. Along with the 2004-2009 Amount and the 2001-2004 Amount described above, Settling Defendants shall provide the Administrator with a

list of the names and last known mailing addresses of the Settlement Class Members for whom Fluke's repair records indicate a repair charge was paid to Settling Defendants for a repair of a Qualified Unit which included replacement of the 3-volt battery. The Administrator shall use this contact information to mail a check for $100 drawn from the Escrow Fund along with a copy of the Full Class Notice (Exhibit A – 1 to the Settlement Agreement) to the Settlement Class Persons specified on the list. These monies shall be distributed by the Administrator prior to any other distributions.

2. The Notice to the Class, as published and posted in accordance with the Settlement Agreement and as outlined in this Court's Preliminary Order Approving Settlement dated October 2, 2009, included a Claim Form for Settlement Class Members to use to assert a claim on the Escrow Fund if they were purchasers of a Qualified Unit, for which they paid Settling Defendants a fee for repairs which included replacement of a 3 volt battery. In addition, the Administrator shall issue and mail a claim form to any Settlement Class Member who requests one. The Claim Form shall: (1) require that claimants certify under oath that they were the owner of one or more Qualified Unit(s) that failed to function despite the insertion

of a new 9 volt battery, that was sent for repair, and that they were charged for a repair that included a 3v battery, or disposed of the nonfunctional unit in lieu of repair, and (2) request that claimants submit any paperwork or documents still in their possession, if any, which would substantiate the purchase, repair, disposition, and/or serial number of the Qualified Unit, while informing the claimants that failure to have paperwork will not necessarily foreclose their right to make a claim.

3. Subject to the availability of funds in the Escrow Fund, to each claimant who timely submits a completed and signed Claim Form meeting the requirements above, promptly following the deadline for timely submitting claim forms, the Administrator shall issue checks from the Escrow Fund to eligible claimants for the following amounts:

   a. the sum of $100 per Qualified Unit for which the claimant submits documentation reasonably showing a Qualified Unit was purchased, received a repair including a 3 volt battery replacement, and paid for such repair;

   b. after all the claims in subparagraph (a) (which have submitted full documentation

of having paid for a repair of a Qualified Unit) have been paid by the Administrator, the Administrator shall pay the sum of $80 per Qualified Unit for which the claimant submits documentation reasonably showing a Qualified Unit was purchased and for which the claimant certifies it failed to function despite the insertion of a new 9 volt battery and that he received a repair and paid for such repair or disposed of the unit in lieu of repair; or

    c. after all the claims in subparagraph (a) (which have submitted full documentation of having paid for a repair of a Qualified Unit) have been paid by the Administrator, the Administrator shall pay the sum of $60 per Qualified Unit for which the claimant submits no documentation but certifies his purchase of a Qualified Unit, its failure to function despite the insertion of a new 9 volt battery, his submission of the unit for repair, the receipt of a repair, and his payment of a repair charge, or that he disposed of the unit in lieu of repair;.

4. The Administrator shall be guided by the goal that to the extent possible, all of those who suffered, or claim to have suffered, harm by reason of the

failure of their TS22 to function shall be compensated before cy pres distribution. If, after the deadline for timely submitting claim forms, the Administrator determines that the aggregate amount payable on valid claims submitted exceeds the amount remaining in the Escrow Fund, the Administrator shall make only proportionate payments on each valid claim.

5. The Administrator shall make payments to all claimants who have documentation of purchase and repair of a TS22 before making any payments to those who lack documentation.

6. The Administrator's determinations regarding the completeness and validity of the claim forms, the amounts to be paid, the identities of the recipients and the timing of the payments shall be conclusive, but the Administrator may consult in writing with Class Counsel, with copies ~~to counsel~~ also to Defendants' counsel, in cases where the Administrator wishes to seek advice concerning any such matters.

7. No money shall be distributed from the Escrow Fund to persons who do not file a claim form or who file a claim form without the required certification, except for the $100 checks for units repaired by Fluke specified in paragraph 1. The deadline for submitting claim forms to the

Administrator is 120 days from the Effective Date. If, after those 120 days, and after the distributions to claimants detailed above, any amount remains of the Escrow Fund, the Administrator, after first giving ten days' notice to Class Counsel and Defendants, shall cause the Repair Fund to be closed and any amounts remaining therein to be conveyed, as a cy pres contribution, to Bay Area Legal Aid. Bay Area Legal Aid does not obtain a vested right from this Settlement Agreement, as a third-party beneficiary or otherwise, to contest any motion for the Court to determine the proper allocation of the Escrow Fund to claimants.

15) **Applicable Taxes to be Paid by Class Member:** A Class Member who obtains a 3-volt battery replacement or a refund pursuant to this Order shall be responsible to pay any applicable federal, state and/or local taxes incident to receipt of same, and such taxes or advice about such taxes shall not be the responsibility of the Settling Defendants or responsibility of Plaintiffs or any counsel for them.

**Miscellaneous Issues:**

16) The N.V. Security Case is hereby dismissed with prejudice.

17) Plaintiffs and all Class Members are hereby permanently barred and enjoined from instituting, commencing or prosecuting, either directly or in any other capacity, any and all of the Released Claims against any of the Released Persons.

18) Pursuant to and as set forth in the Settlement Agreement, the Released Persons shall be fully, finally, and forever released, relinquished, and forever discharged by the Releasing Persons from the Released Claims.

19) Neither the Settlement Agreement, nor any of its terms and provisions, nor any of the negotiations or proceedings connected with it, nor any of the documents or statements referred to therein shall be:

    a. offered by any person and/or received against the Defendants as evidence or construed as or deemed to be evidence of any presumption, concession, or admission by the Defendants of the truth of the facts alleged by any person or the validity of any claim that has been or could have been asserted in the Litigation or in any litigation, or other judicial or administrative proceeding, or the deficiency of any defense that has been or could have been asserted in the Litigation or in any litigation, or of any liability, negligence, fault or wrongdoing of the Defendants;

    b. offered by any person and/or received against the Defendants as evidence of a presumption, concession or admission of any fault, misrepresentation or omission with respect to any statement or written document approved or made by the Defendants or any other wrongdoing by the Defendants;

    c. offered by any person and/or received against the Defendants as evidence of a presumption, concession, or admission with respect to any liability, negligence, fault, or wrongdoing, or in any way referred to for any other reason against any of the settling parties, in any civil, criminal, or administrative action or proceeding; provided, however, that nothing contained in this paragraph shall prevent the Settlement Agreement (or any agreement or order relating thereto) from being used, offered, or received in evidence in

any proceeding to approve, enforce, or otherwise effectuate the Settlement Agreement (or any agreement or order relating thereto) or the Final Judgment, or in which the reasonableness, fairness, or good faith of the parties in participating in the Settlement Agreement (or any agreement or order relating thereto) is an issue, or to enforce or effectuate provisions of the Settlement Agreement, the Final Judgment, or the Release as to the Settling Defendants, Plaintiffs, Certified Class Representatives or the Certified Class Members; or offered by any person and/or received against any Plaintiff or Class Representative as evidence or construed as or deemed to be evidence that any of their claims in any of the cases consolidated herein lack merit.

20) Without affecting the finality of this Final Judgment in any way, this Court hereby retains continuing jurisdiction over: (a) the disposition of the settlement benefits and Claims Administration; and (b) the settling parties for purposes of construing, enforcing and administering the Settlement Agreement.

**IT IS SO ORDERED.**

Date: February 8, 2010

_____
The Honorable George H. Wu
United States District Judge

# 6327223_v3